ERICA KINSMAN,

        Plaintiff,

v.

JAMEIS WINSTON,

        Defendant.

CASE NO. 6:15-cv-696-Orl-22GJK

**PLAINTIFF'S MOTION TO DISMISS
DEFENDANT'S COUNTERCLAIM AND
STRIKE PORTIONS OF ANSWER &
AFFIRMATIVE DEFENSES (DOC. 7)**

(AND INCORPORATED
MEMORANDUM OF LAW)

Plaintiff Erica Kinsman ("Ms. Kinsman"), pursuant to Rules 12(b)(6) and 12(f), Federal Rules of Civil Procedure, respectfully requests that the Court enter an order dismissing Defendant's Counterclaim with prejudice and striking portions of his Answer & Affirmative Defenses (Doc. 7).[1]

## I.   INTRODUCTION

Neither time nor governing law support the claims in Defendant's Counterclaim. Because the statements that form the basis for Defendant's two defamation claims are simply the continued publication of Ms. Kinsman's statements on December 7, 2012, that she was raped and on January 10, 2013, that Defendant was her rapist, his defamation claims are time-barred under Florida's single publication rule and two-year statute of limitations. Defendant's tortious interference claim, premised on the same allegedly defamatory statements, fails for the same reasons. Finally, even if Defendant's Counterclaim was not

---

[1] To the extent necessary, Ms. Kinsman reserves her right to seek additional relief – if appropriate – in connection with Defendant's Answer, Affirmative Defenses & Counterclaim pursuant to FED. R. CIV. P. 11, 28 U.S.C. § 1927 and the Court's inherent authority.

time-barred, Ms. Kinsman's statements are privileged under Florida defamation law and constitute constitutionally protected speech that render her immune from suit.

Portions of Defendant's Answer and Affirmative Defenses should suffer a similar fate and be struck – including, in particular, a highly inflammatory and gratuitous 17-page "Preliminary Statement" in which Defendant attacks Ms. Kinsman's character and credibility through unfounded claims of lying, manipulating evidence and other impertinent allegations. Accordingly, for the reasons below, the Court should dismiss Defendant's Counterclaim with prejudice and strike portions of his Answer and Affirmative Defenses.

## II.    BACKGROUND

On April 16, 2015, Ms. Kinsman brought suit, alleging that Defendant Jameis Winston forcibly raped her and asserting claims for, *inter alia*, sexual battery. *See* (Doc. 2). On May 8, 2015, Defendant counterclaimed, contending Ms. Kinsman's allegations of rape amount to defamation and asserting claims for (i) defamation per se (Count I); (ii) defamation (Count II); and (iii) tortious interference with prospective business advantage based on Ms. Kinsman's alleged defamation (Count III). *See generally* (Doc. 7).

According to Defendant, all three of these claims arise out of Ms. Kinsman's reports of rape and her statements identifying Defendant as her rapist to law enforcement and Florida State University ("FSU"). (Doc. 7, Countercl. at 51-53, ¶ 44). Collectively, Defendant refers to these reports and statements as the "False Statements." (*Id.*). Notably, all of the statements identified by Defendant as defamatory are secondary publications of the original report that Ms. Kinsman made on December 7, 2012, and later on January 10, 2013, when she learned for the first time who her rapist was and called Tallahassee Police Department

Investigator Scott Angulo to identify him by name.  Ten months later, that identification was confirmed by conclusively matching DNA from semen samples to a swab obtained from Defendant.

## III.  STATEMENT OF LAW

### A.  Motions to Dismiss

Groundless claims should be exposed "at the point of minimum expenditure of time and money by the parties and the court."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007) (quotations omitted).  Discovery in federal cases can be expensive, and courts must be conscious of this reality so as to avoid situations in which parties use the threat of such expense to push settlement of "anemic cases."  *Id*. at 559.  Early disposition is therefore appropriate when a cause of action is simply not plausible.  *Id*. at 570.

To be plausible, a claim must, at a minimum, contain allegations that give fair notice of what the claim is and the grounds that support it, including "factual allegations adequate to raise a right to relief above a speculative level."  *Fin. Sec. Assur. Inc. v. Stephens Inc.*, 500 F.3d 1276, 1282 (11th Cir. 2008) (citing *Twombly*); *see also*, *e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The obligation to provide the grounds of an entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.  While factual allegations are to be accepted as true, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal."  *Davila v. Delta Airlines Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).  Without resorting to such illegitimate means, the factual allegations in a pleading "must possess enough heft to set forth a plausible entitlement to

relief," *Fin. Assur. Inc.*, 500 F.3d at 1282 (quotation omitted), and "nudge the claim across the line from conceivable to plausible." *Jacobs v. Tempur-Pedic Int'l Inc.*, 626 F.3d 1327, 1333 (11th Cir. 2010) (quotation omitted).

Dismissal under Rule 12(b)(6) is also proper where a claim suffers from a dispositive legal flaw, or where the facts alleged simply cannot support an element of the claim. *See*, *e.g.*, *Aldridge v. Lily-Tulip, Inc.*, 953 F.2d 587, 593 (11th Cir. 1992); *Ortega Trujillo v. Banco Central Del Ecuador*, 17 F. Supp. 2d 1340, 1342 (S.D. Fla. 1998) ("Regardless of the alleged facts, however, a court may dismiss a complaint on a dispositive issue of law."); *Farrow v. Henderson*, 195 F. Supp. 2d 1320, 1323 (M.D. Fla. 2001).

## B. Motions to Strike

Upon a motion by a party or on its own initiative, a district court may strike from a pleading an insufficient defense or "any redundant, immaterial, impertinent or scandalous matter." FED. R. CIV. P. 12(f).[2] "The purpose of a motion to strike is to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." *Schmidt v. Life Ins. Co. of N. Am.*, 289 F.R.D. 357, 358 (M.D. Fla. 2012) (quotations and citations). While striking allegations from a pleading can be a drastic remedy, *Augustus v. Bd. of Pub. Instruction of Escambia Cnty., Fla.*, 306 F.2d 862, 868 (5th Cir. 1962), district courts have broad discretion when considering motions to strike. *See*, *e.g.*, *Williams v. Eckerd Family Youth Alternative*, 908 F. Supp. 908, 910 (M.D. Fla. 1995) ("The Court has

---

[2] "Immaterial" matter has no important relationship to the claim. *See*, *e.g.*, *Fodor v. E. Shipbuilding Grp.*, No. 5:12-cv-28, 2014 WL 50783, at *5 (N.D. Fla. Jan. 7, 2014); *S.D. v. St. Johns Cnty. Sch. Dist.*, No. 3:09-cv-250, 2009 WL 1941482, at *1 (M.D. Fla. July 7, 2009). "Impertinent" matter does not relate to the issues raised in the pleading. *Id.* "Scandalous" matter generally refers to allegations that cruelly or unnecessarily reflect on the moral character of an individual or casts a derogatory light on a party. *Id.*; *see also*, *e.g.*, *S.E.C. v. Lauer*, No. 03-cv-80612, 2007 WL 1393917, at *2 (S.D. Fla. Apr. 30, 2007).

broad jurisdiction when considering a motion to strike. . . ."); *see also*, *e.g.*, *Stephens v. Ga. Dep't of Transp.*, 134 F. App'x 320, 322-23 (11th Cir. 2005) (unpublished) (finding no abuse of discretion and affirming order striking of portions of motion for summary judgment).

## IV. ARGUMENT

### A. The Court Should Dismiss Defendant's Counterclaim With Prejudice

Defendant's Counterclaim should be dismissed with prejudice. Under Florida's single publication rule and two-year statute of limitations, Counts I and II of Defendant's Counterclaim – for defamation per se and defamation – are time barred and fail as a matter of law. Similarly, Count III improperly attempts to recast Defendant's defamation claims into a purported claim for tortious interference with prospective business advantage that is predicated upon the same time-barred statements that fail as a matter of law in Counts I and II. Finally, even if Counts I, II and III were not time barred (they are), Ms. Kinsman is immune from suit because her alleged statements were privileged and, as matter of law, Defendant cannot pursue claims arising out of protected speech under the Petition Clause of the First Amendment to U.S. Constitution.

#### 1. Counts I and II of Defendant's Counterclaim Are Time Barred Under Florida's Single Publication Rule and Two-Year Statute of Limitations

In general, defamation involves a publication of a false statement, about the claimant, to a third party, such that the false statement causes injury to the claimant. *See*, *e.g.*, *Jews For Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008); *Valencia v. Citibank Int'l*, 728 So. 2d 330, 300 (Fla. 3d DCA 1999). To assert and prevail on a claim for defamation or defamation per se, however, is not so simple in Florida, where the law has applied various

restrictions to cases founded on the publication or utterance of alleged defamatory statements.

Early common law held that a separate cause of action arose each time the alleged libel was revealed to a third party. *See*, *e.g.*, *Daytona Beach News-Journal Corp. v. First Am. Dev. Corp* ("*Daytona*"), 181 So. 2d 565, 567 n.1 (Fla. 3d DCA 1966). Under that so-called 'multiple publication rule,' each time the defendant, or a transmitting third-party, exposed a new third party to the same false statement, the occurrence was considered a new defamatory publication, for which the defendant could be held liable. *See First Am. Dev. Corp. v. Dayton Beach News-Journal Corp.* ("*First Am.*"), 196 So. 2d 97, 101 (Fla. 1966). As that rule enabled long-delayed and multifarious cases over one original false statement, courts in the twentieth century developed the single-publication rule, which began as the "rule that all causes of action for widely circulated libel must be litigated in one trial, and that each [publication] need not be separately pleaded and proved." *Daytona*, 181 So. 2d at 567 n.1.

While Florida courts extended the single publication rule to apply statutes of limitation and venue restrictions, they refused certain piecemeal "pruning" of the "crooked, wrenched and distorted tree" of defamation as a matter of common law, opting instead to invite "a new substantive rule . . . by the process of legislation." *Id*. at 567 n.1, 568; *see also First Am.*, 196 So. 2d at 102. The legislature quickly obliged and, in 1967, enacted the following statutory provisions:

> No person shall have more than **one choice** of venue for damages for libel or slander, invasion of privacy, or any other tort **founded upon any single publication**, exhibition **or utterance**. . . . Recovery in any action shall include all

> damages for **any such tort** suffered by the plaintiff in all jurisdictions.
>
> The cause of action for damages founded upon a single publication or exhibition or utterance [referenced above] shall be deemed to have **accrued at** the time of the **first publication** or exhibition or utterance thereof in this state.

FLA. STAT. §§ 770.05, .07 (emphasis added).

Under this statutory single-publication rule, an originally published defamatory statement does not spawn a separate claim against a defendant each time (of however many) it is uttered or reaches a new person; the original statement is actionable, if at all, only once. The original statement's subsequent reach is an issue pertinent merely to damages, not to accrual of a claim. Indeed, contrary to prior common law, an action in Florida for defamation accrues, if at all, upon an originally published statement's first publication or utterance, regardless both of whether the claimant is in a position to know of it and of whether it has yet to cause any damage. *See*, *e.g.*, *Wagner, Nugent, Johnson, Roth, Romano, Erikson & Kupfer, P.A. v. Flanagan*, 629 So. 2d 113, 115 (Fla. 1993); *compare also id*. (Kogan J., concurring) with *id.* at 115-16 (Shaw J., dissenting).

The Florida Supreme Court has found Chapter 770 to be plain and unambiguous, concluding that it applies to all litigants: "We hold [chapter 770] applicable to all civil litigants, both public and private, in defamation actions." *Id.* at 115 (applying rule to private letter sent to insurer's lawyer). Moreover, whether the claimant is aware of the publication or utterance at the time it is first published is irrelevant; the claim accrues on initial

publication rather than on discovery. *See*, *e.g.*, *Flanagan*, 629 So. 2d at 114-15 (construing FLA. STAT. §§ 95.031 and 770.07).[3]

Here, Defendant's claims for defamation in Counts I and II of his Counterclaim are predicated on the alleged "False Statements" – which Defendant defines as Ms. Kinsman's January 10, 2013 statement to Tallahassee Police that "Defendant raped her" and which include her later republications of that statement to university officials and others. *See* (Doc. 7, Countercl. at 51-53, ¶¶ 44(a)-(j)). Although Defendant takes great pains to emphasize Ms. Kinsman's subsequent republication of these statements, the Florida legislature long ago decided that the sole focus for purposes of the single publication rule and statute of limitations is the date of original publication. As Defendant acknowledges, Ms. Kinsman first fully published that she was raped by Defendant on January 10, 2013, when she informed Tallahassee Police Department Investigator Scott Angulo that Defendant had raped her. (*Id*. at 51, ¶¶ 44(a)). Whether Ms. Kinsman repeated this statement to others in an effort to hold Defendant accountable for his actions is irrelevant under the statute of limitations, because any claim for defamation accrued at the time of original publication. Accordingly, Counts I and II for defamation per se and defamation accrued on January 10, 2013 – more than two years before Defendant elected to file his Counterclaim on May 8, 2015 – and are therefore barred by Florida's single publication rule and statute of limitations. FLA. STAT. §§ 95.031, .11(4)(g) and 770.05, .07; *Flanagan*, 629 So. 2d at 114-15; *see also*, *e.g.*, *Hendricks v. Rambosk*, No. 2:10-cv-526, 2011 WL 1429646, at *7-*8 (M.D. Fla. Apr. 14, 2011)

---

[3] Even if the discovery rule applied (it does not), Defendant has conceded that he was aware of the statements no later than January 22, 2013, which was when he met with the FSU Athletic department to discuss the accusations. *See*, *e.g.*, (Doc. 7, Answer at 21, ¶ 12).

(finding claim for defamation filed more than two years after original publication date was time-barred as a matter of Florida law).

> ### 2. Count III of Defendant's Counterclaim Improperly Attempts to Recast His Defamation Claims Into A Separate Tort and Fails As A Matter of Law

In addition to claims for defamation *per se* and defamation, in Count III, Defendant purports to assert a claim for tortious interference with prospective business advantage that is expressly premised upon the same allegedly "False Statements" used to support Counts I and II. *See* (Doc. 7, Countercl. at 59-61, ¶¶ 77-81). In apparent recognition of the imminent and fatal problems with the statute of limitations on his defamation claims, Defendant has attempted to recast those time-barred claims into a tort with a longer statute of limitations. Such an end-run around the limitations period is not permitted and, like his defamation claims, Count III fails as a matter of law to state a claim upon which relief can be granted.

As a corollary to the requirement that a claim for defamation accrue upon the original publication of the defamatory statement, a feature of the single publication rule (if not also the common law), is that defamation however characterized and labeled cannot be split into other causes of action and must be brought as a single cause of action. *See*, *e.g.*, *Fridovich v. Fridovich*, 598 So. 2d 65, 69-70 (Fla. 1992) (holding defamation cannot be re-characterized as intentional infliction of emotional distress); *MYD Marine Distribs., Inc. v. Donovan Marine, Inc.*, No. 07-cv-61624, 2009 WL 701003, at *2-*4 (S.D. Fla. 2009) (finding "tortious interference" with business relationships, negligent supervision and negligent retention claims subsumed within defamation); *Callaway Land & Cattle Co., Inc. v. Banyon Lakes C. Corp.*, 831 So. 2d 204, 208-09 (Fla. 4th DCA 2002) (affirming dismissal of

counterclaim for, *inter alia*, tortious interference based on time-barred defamatory statement under single publication/single action rule, and observing that a contrary result would allow a party to "circumvent the statute of limitations by simply re-describing [his cause of action] to fit a different category of intentional wrong"); *Oviada v. Bloom*, 756 So. 2d 137, 140-41 (Fla. 3d DCA 2000) (finding claims of conspiracy to commit false-light invasion of privacy, tortious interference, and conspiracy to commit tortious interference subsumed within defamation); *cf. Orlando Sports Stadium, Inc. v. Sentinel Star Co.*, 316 So. 2d 607, 609 (Fla. 5th DCA 1975) (rejecting contention that claims for intentional interference and libel based on same set of news articles were two separate causes of action and observing that, in the context of defamation, "a single wrongful act gives rise to a single cause of action. . . .") (quotation omitted).

The single publication/single action rule therefore not only prohibits multiple claims for defamation, but also restricts a party from bringing multiple causes of action premised on the same defamatory statements. *Id.*; *see also*, *e.g.*, *Kamau v. Slate*, No. 4:11-cv-522, 2012 WL 5390001, at *7 (N.D. Fla. Oct. 1, 2012) (citing *Callaway*, 831 So.2d at 208), *report and recommendation adopted*, 2012 WL 5389836, at *1 (N.D. Fla. Nov. 5, 2012). It prevents a party from evading a defective defamation claim such as, for example, by attempting to circumvent Florida's short, two-year statute of limitations by re-describing a cause of action to fit a different category of intentional wrong. *Kamau*, 2012 WL 5390001, at *7; *see also*, *e.g.*, *Klayman v. Judicial Watch, Inc.*, 22 F. Supp. 3d 1240, 1256 (S.D. Fla. 2014) ("Pursuant to [this] rule, courts dismiss concurrent counts for related torts based on the same publication and underlying facts as the failed defamation count.").

Thus, "[w]hen claims are based on analogous underlying facts and the causes of action are intended to compensate for the same alleged harm, a [party] may not proceed on multiple counts for what is essentially the same defamatory publication or event." *Klayman*, 22 F. Supp. 3d at 1256 (citations omitted). Accordingly, claims for tortious interference are precluded when, as here, they do not set forth a claim based on facts independent of the allegedly defamatory statement. *See*, *e.g.*, *Tobinick v. Novella*, No. 9:14-cv-80781, 2015 WL 328236, at *11 (S.D. Fla. Jan. 23, 2015) (dismissing claim for tortious interference pursuant to single publication/single action rule); *Kamau*, 2012 WL 5390001, at *9 (same); *MYD Marine Distribs., Inc.*, 2009 WL 701003, at *2-*4 (S.D. Fla. 2009) (granting judgment as a matter of law on claim for tortious interference pursuant to single publication/single action rule and statute of limitations); *Oviada*, 756 So. 2d at 140-41 (affirming summary judgment on claims for, *inter alia*, intentional interference with advantageous business relationship and conspiracy to interfere with an advantageous business relationship pursuant to single publication/single action rule and statute of limitations).

As in the preceding cases, Defendant's claim in Count III for tortious interference with prospective business advantage is duplicative of and improperly attempts to recast his time-barred defamation claims. The grounds for his claim are that Ms. Kinsman's allegedly "False Statements" interfered with his prospective business relationships and caused him reputational and professional injury. *See*, *e.g.*, (Doc. 7, Countercl. at 60, ¶¶ 79-80). These alleged injuries are "merely items of damage arising from the same wrong" as alleged in his defamation claims, namely the publication of the allegedly "False Statements." *See*, *e.g.*,

*Callaway*, 831 So. 2d at 208. Inasmuch as Defendant's time-barred defamation claims cannot stand, as a matter of law, so too fails his tortious interference claim in Count III.

    **3.    Ms. Kinsman Is Immune From Suit Because Her Allegedly Defamatory Statements Are Privileged and Constitutionally Protected Speech**

As noted above, all three counts in Defendant's Counterclaim are predicated on harm Defendant allegedly suffered as a result of Ms. Kinsman's allegedly "False Statements," which consist of her reports of rape that she made to, among others, Tallahassee Police Investigator Angulo on January 10, 2013, State Attorney Investigator Newlin on November 21, 2013, and various university personnel "in connection with . . . FSU Code of Conduct" proceedings. *See generally* (Doc. 7, Countercl. at 51-53, ¶ 44). Thus, Defendant claims Ms. Kinsman defamed him in the course of reporting a crime to law enforcement and reporting violations of FSU's Code of Conduct to university personnel. Defendant also alleges that the same reports were later repeated by Ms. Kinsman, either directly or by or through her legal counsel, in various other contexts. (*Id.* at 52-53, ¶¶ 44(d), (i), (j)). In addition to being barred by Florida's single publication/single action rule and statute of limitations, these allegedly "False Statements" are both privileged under Florida defamation law and constitute constitutionally protected speech under the Petition Clause of the First Amendment to the U.S. Constitution. As a matter of law, Plaintiff is immune from suit based on these privileged and protected statements and Defendant's claims must therefore be dismissed.

    a.    <u>Immunity for Privileged Statements</u>

To be defamatory under Florida law, a false statement must be made in the absence of

a privilege to report the published matter to the third-party recipient(s). *See*, *e.g.*, *Nodar v. Galbreath*, 462 So. 2d 803, 808-09 (Fla. 1984); *cf. Thomas v. Jacksonville Television, Inc.*, 699 So. 2d 800, 803-04 (Fla. 1st DCA 1997). In Florida, reports to law enforcement, government officials and the government are conditionally privileged by law. *See*, *e.g.*, *Fridovich*, 598 So. 2d at 69-70 (concluding defamatory reports made to police and state's attorney prior to the institution of criminal charges are presumptively qualifiedly privileged); *Nodar*, 462 So. 2d at 809-12 (finding, as a matter of law, that comments made to school board officials during public meeting were conditionally privileged, and reversing and remanding for entry of a directed verdict notwithstanding jury's verdict).

Conditional privilege raises a presumption of good faith that requires proof of "express malice" – that is, that the statement was primarily intended to harm the claimant, rather than to further personal or social interests. *Nodar*, 462 So. 2d at 806, 810-11. It is insufficient merely to allege that the statement was factually untrue or was made in strong or intemperate words; rather, a claimant must demonstrate that the "speaker used his position 'to gratify his malevolence.'" *Id*. at 811 (citation omitted). Where the statement itself does not reflect express malevolence, it is the claimant's burden to demonstrate from the circumstances that the primary motive for the statement was an intent to injure the claimant. *See*, *e.g.*, *Thomas v. Tampa Bay Downs, Inc.*, 761 So. 2d 401, 405 (Fla. 2d DCA 2000). However, whether an allegedly defamatory statement remains privileged is a question of law for the court when the circumstances surrounding the statement are undisputed or unquestionably clear. *Id*. at 404 (citing *Nodar*, 462 So. 2d at 810).

Here, the circumstances surrounding Ms. Kinsman's statements are clear and Defendant's allegations fail to overcome their conditionally privileged character as a matter of Florida law. *See*, *e.g.*, *Fridovich*, 598 So. 2d at 69-70; *Nodar*, 462 So. 2d at 809-12. Defendant's Counterclaim should therefore be dismissed.

        b.      <u>Immunity for Protected Speech Under the Petition Clause of the First Amendment to U.S. Constitution</u>

Under a long-established line of U.S. Supreme Court cases, when claims are lodged in response to a party's legitimate use of governmental processes, a court must apply heightened scrutiny and dismiss them unless they can clear a very high bar. *See*, *e.g.*, *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60-61 (1993); *City of Columbia v. Omni Outdoor Adver., Inc.*, 499 U.S. 365, 380-81 (1991). This immunity from suit – known as petition clause or *Noerr-Pennington*[4] immunity – derives from the First Amendment's protection of the "[r]ight of the people . . . to petition the government for a

---

[4] *Noerr-Pennington* immunity is named for *United Mine Workers of Am. v. Pennington*, 381 U.S. 657 (1965), and *E. R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961). Petition clause immunity has its roots in the *Noerr-Pennington* line of antitrust cases that holds efforts to influence public officials are protected by the Petition Clause and not a violation of antitrust law, even when the petitioning is for a disfavored motive (such as eliminating competition). Later decisions make clear that *Noerr-Pennington* immunity applies to claims outside the antitrust context. *See*, *e.g.*, *Prof'l Real Estate Investors, Inc.*, 508 U.S. at 59 ("Whether applying *Noerr* as an antitrust doctrine *or invoking it in other contexts*. . . .") (emphasis added); *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 913-14 (1982) (applying *Noerr-Pennington* immunity to state law claims against defendant NAACP for boycott); s*ee also*, *e.g.*, *Cardtoons, L.C. v. Major League Baseball Players Ass'n*, 208 F.3d 885, 889 (10th Cir. 2000) (discussing use of the term *Noerr-Pennington* immunity for antitrust cases versus petition clause immunity for all other cases). As summarized by one federal court:

> [W]hile the doctrine arose in connection with antitrust cases, it is fundamentally based on First Amendment principles. More than one court has held that the doctrine is a principal [sic] of constitutional law that bars litigation arising from injuries received as a consequence of First Amendment petitioning activity, *regardless of the underlying causes of action asserted.* . . ..

*Computer Assocs. Int'l, Inc. v. Am. Fundware, Inc.*, 831 F. Supp. 1516, 1522 (D. Colo. 1993) (internal quotations and citations omitted).

redress of grievances."  Claims that attack constitutionally protected petitioning must be promptly dismissed to achieve the goal of minimizing intrusion on the First Amendment except in those rare instances when a party can prove the speech comes within the so-called "sham" exception.  *See*, *e.g.*, Lori Potter & W. Cory Haller, *SLAPP 2.0: Second Generation of Issues Related to Strategic Lawsuits Against Public Participation*, 45 Envtl. L. Rep. News & Analysis 10136, 10140-41 (2015).  Even malicious reports – which Ms. Kinsman's clearly were not – provide immunity if intended to influence a governmental or judicial process. *See*, *e.g., Anchorage Joint Venture v. Anchorage Condo. Ass'n,* 670 P.2d 1249, 1250-51 (Colo. App. 1983); *cf. Matossian v. Fahmie*, 161 Cal. Rptr. 532, 535-36 (Cal. Ct. App. 1980).

A petitioner is entitled to immunity for protected speech under the Petition Clause unless the claimant can demonstrate that her petitioning comes within the "sham" exception. *Prof'l Real Estate Investors, Inc.*, 508 U.S. at 60-61.  To come within the ambit of the "sham" exception, it is the claimant's burden to prove that the petitioner used governmental processes as a "weapon" and that, regardless of her intent or purpose, her efforts were "not genuinely aimed at procuring favorable governmental action at all." *City of Columbia,* 499 U.S. at 380; *see also*, *e.g.*, *McGuire Oil Co. v. Mapco, Inc.*, 958 F.2d 1552, 1558 n.9 (11th Cir. 1992) ("Thus, the burden falls on [the counterclaimant] in this case to allege facts sufficient to show that *Noerr–Pennington* immunity did not attach to plaintiffs' actions.").

Here, Ms. Kinsman's reports to law enforcement and university disciplinary officers resulted in investigations and disciplinary hearings, which should be sufficient in itself to defeat any contention that they were a sham.  *See*, *e.g.*, *Prof'l Real Estate Investors, Inc.*, 508 U.S. at 60 n.5 (observing that successful outcomes are by definition reasonable efforts at

petitioning and are therefore not shams, and further noting that even "[e]ven when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit.") (citation omitted). Even if the reports were not fully investigated and did not result a criminal prosecution, Defendant has not carried – and cannot carry – his burden of proving up the "sham" exception in the circumstances of this case.

Defendant alleges that Plaintiff's statements were generally "malicious," "defamatory" and "false," and that Plaintiff's "primary purpose in making the False Statements was to indulge ill will, hostility, and an intent to harm Mr. Winston, in order to entice, coerce, extort, and force him to pay her a substantial amount of money to 'make her go away.'" (Doc. 7, Countercl. at 56, ¶59). These allegations, even if true, are insufficient to establish the sham exception as a matter of law. Ms. Kinsman's motives – which, in any event, were in no way malicious – are irrelevant because the *Noerr–Pennington* immunity "shields . . . a concerted effort to influence public officials regardless of intent or purpose." *City of Columbia*, 499 U.S. at 380. Here, by Defendant's own admission, all of Ms. Kinsman's allegedly "False Statements" were made in the course of reporting the crime of rape, the code of conduct violation of sexual assault, and surrounding publicity for the purpose of instigating law enforcement and code of conduct investigations by government officials. (Doc. 7, Countercl. at 51-53, ¶¶ 44(a)-(j)). The "False Statements" are thus ipso facto entitled to immunity.[5]

---

[5] By statute, a number of states have codified or extended the Supreme Court's holdings in the *Noerr–Pennington* line of cases to reports of crimes to law enforcement. For instance, California's anti-SLAPP statute provides: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike . . . ." CAL. CODE CIV. PROC. § 425.16(b)(1). California courts have held that this statute precludes liability for communications made to law enforcement regarding

Moreover, not only are Ms. Kinsman's statements to law enforcement and university officials entitled to Petition Clause immunity, associated communications by her and her counsel, as alleged in Defendant's Counterclaim, (*Id.* at 52, ¶¶ 44 (d), (i), (j)),[6] are entitled to the same degree of protection. *See*, *e.g.*, *Noerr,* 365 U.S. at 142-43 (immunizing speeches, newspaper articles, magazine articles, and publicity campaigns employing even apparently unethical or deceptive methods when part of an overall effort to influence governmental action); *Claiborne Hardware Co.*, 458 U.S. at 886 (1982) (immunizing picketing and economic boycott); *Hallco Envtl., Inc. v. Comanche Cnty*, 148 F.3d 1190 (10th Cir. 1998) (immunizing a media campaign against a landfill); *Brownsville Golden Age Nursing Home, Inc. v. Wells*, 839 F.2d 155 (3d. Cir. 1988) (immunizing a publicity campaign that included contacts with the television news show "60 Minutes").

Because Ms. Kinsman was acting to obtain some form of legitimate governmental action or outcome – including, more specifically, Defendant's investigation, prosecution, and disciplinary proceedings – her petitioning was not a sham and enjoys immunity. Defendant has nowhere alleged that Ms. Kinsman was not actually seeking investigation by public officials when she reported being raped. To the contrary, the gravamen of Defendant's Counterclaim is that Ms. Kinsman wanted him investigated and sanctioned – allegations which thereby preclude Defendant from coming within the "sham" exception to the

---

suspected criminal activity. *See e.g., Tisdale v. City of Los Angeles*, 617 F. Supp. 2d 1003, 1006 (C.D. Cal. 2009); *Lefebvre v. Lefebvre*, 131 Cal. Rptr. 3d 171, 173 (Cal. Ct. App. 2011); *see also, e.g., Annamalai v. Capital One Fin. Corp.*, 738 S.E.2d 664, 666 (Ga. Ct. App. 2013) (holding that statements made to police or investigators pertaining to ongoing investigation are protected speech under Georgia's anti-SLAPP statute).

[6] Defendant here alleges that Ms. Kinsman, in a documentary film interview, and her counsel, to media outlets, stated that she was raped by Defendant.

constitutional immunity provided by the Petition Clause. Ms. Kinsman is therefore immune from suit and Defendant's entire Counterclaim must be dismissed.[7]

### B. The Court Should Strike Portions of Defendant's Answer & Affirmative Defenses

Defendant's 17-page "Preliminary Statement" should be stricken as a transparent attempt to use court pleadings as a vehicle for immaterial and improper public attacks on Ms. Kinsman. Moreover, Defendant's sixth, seventh, eighth and ninth affirmative defenses should each be stricken because they are insufficient as a matter of law. As previously noted, a district court may strike from a pleading any "redundant, immaterial, impertinent or scandalous matter." FED. R. CIV. P. 12(f). While a finding of just one of these four attributes will justify granting a request to strike, many – if not most – of these are present here. In fact, it is hard to imagine a pleading better suited for the application of Rule 12(f).

### 1. Defendant's "Preliminary Statement"

The extraneous 17-page "Preliminary Statement" that precedes Defendant's Answer disparages Ms. Kinsman's moral character, repeatedly calling her a "liar." (Doc. 7 at 1-17). In fact, the "Preliminary Statement" either calls Ms. Kinsman a "liar" or states that she is lying at least 19 times. The "Preliminary Statement" further accuses Ms. Kinsman of being

---

[7] In addition to immunity and being barred as a matter of Florida's single publication rule and statute of limitations, Defendant's Counterclaim is also an impermissible shotgun pleading of the type which has been roundly condemned by the Eleventh Circuit and this Court. It is well established that such shotgun pleadings – i.e., pleadings containing multiple counts that incorporate by reference all of the prior allegations pled in support of each of the prior counts – fail to comply with FED. R. CIV. P. 8(a)(2) and should be dismissed. *See, e.g.*, *PVC Windoors, Inc. v. Babbitbay Beach Constr., N.V.*, 598 F.3d 802, 806 n.4 (11th Cir. 2010) (collecting cases and noting that the Court "has condemned such pleadings in a series of cases stretching back at least as far as [1991]") (internal citation omitted); *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 n.9 & 1295-96 (11th Cir. 2002) (collecting cases and noting with "great dismay" that shotgun pleadings "impede the due administration of justice and, in a very real sense, amount to obstruction of justice") (internal citations and quotation omitted); *see also, e.g.*, *Berger v. J. Slagter & Son Constr. Co.*, No. 6:10-cv-191, 2010 WL 1644937, at *2 (M.D. Fla. Apr. 21, 2010).

"motivated by the most insidious objectives –greed" and "engaged in a vile scheme." (*Id*. at 2, 14). Finally, the "Preliminary Statement" repeatedly accuses Ms. Kinsman of the crimes of obstructing and impeding criminal investigations. Immediately following this prolix and repetitive gratuitous attack, Defendant begins his actual Answer, Affirmative Defenses and Counterclaim, repeating again many of the same inflammatory and immaterial remarks.

Defendant's "Preliminary Statement" is a part of neither his Answer nor his Counterclaim and is not incorporated by reference in either. It is nothing more than page upon page of unnumbered paragraphs that personally attack Ms. Kinsman, her counsel and her family. It falls somewhere between an improperly hostile closing argument at trial and a posting on a Florida State football blog. What it is clearly not is either a material or appropriate statement introducing Defendant's Answer and Counterclaims. Such a scandalous, redundant, and gratuitous Preliminary Statement should be stricken under Rule 12(f).

The entire "Preliminary Statement" is immaterial and impertinent as those terms are employed in federal court.[8] It is neither a part of the Answer nor the Counterclaim, has no essential or important relationship to the claim for relief, and consists almost wholly of statements that do not pertain, and are not necessary, to the issues in question. Moreover, the "Preliminary Statement" is scandalous in the extreme.

A scandalous matter is one "which reflects cruelly upon a party's moral character, uses repulsive language, or detracts from the dignity of the court." *Fodor*, 2014 WL 50783

---

[8] As previously noted, an immaterial matter "is that which has no essential or important relationship to the claim for relief . . . or a statement of unnecessary particulars in connection with and descriptive of that which is material." *See, e.g.*, *Fodor*, 2014 WL 50783 at *5. An impertinent matter is one that "consists of statements that do not pertain, and are not necessary, to the issues in question." *Id*.

at *5. The 19 statements that Ms. Kinsman is a liar and vindictive outrage regarding "insidious motives" and "vile" behavior, as referenced above, are clearly designed for some purpose other than to respond to Ms. Kinsman's claims or give notice of Defendant's Counterclaim. In violation of Rule 10(b), Defendant does not even make a serious attempt to legitimize the "Preliminary Statement" as the paragraphs are not even numbered (let alone incorporated into either the Answer or Counterclaim). The "Preliminary Statement" should accordingly be stricken.

### 2. Defendant's Insufficient Affirmative Defenses

Defendant's Answer purports to raise numerous affirmative defenses, none of which are properly pled and the most insufficient of which should be struck on their face. Specifically:

- "Plaintiff's own conduct" (Sixth Defense);

- Failure to exhaust administrative remedies (Seventh Defense);

- A general reservation of all defenses, whether "affirmative or otherwise" (Eighth Defense); and

- A further reservation of all "claims, counterclaims, third-party claims, or other claims" (Ninth Defense).

(Doc. 7, Answer at 40-41).

"An affirmative defense raises matters extraneous to the plaintiff's *prima facie case;* as such, they are derived from the common law plea of 'confession and avoidance.'" *In re Rawson Food Serv., Inc.*, 846 F.2d 1343, 1349 (11th Cir. 1998) (citation omitted). Affirmative defenses are subject to the general pleading requirements of Rule 8(a) and "[s]hould be stricken if they fail to recite more than bare-bones conclusory allegations." *Am.*

*Home Assur. Co. v. Weaver Aggregate Transp., Inc.*, No. 5:10-cv-329, 2011 WL 4346576, at *3 (M.D. Fla. Sept. 16, 2011) (citations and quotations omitted); *see also*, *e.g.*, *Shechter v. Comptroller of NY*, 79 F. 3d 265, 270 (2nd Cir. 1996) ("Affirmative defenses which amount to nothing more than mere conclusions of law and are not warranted by any asserted facts have no efficacy.") (quotation omitted); *Yash Raj Films (USA) Inc. v. Atl. Video*, No. 03-cv-7069, 2004 WL 1200184, at *2 (N.D. Ill. 2004) ("Simply naming a legal theory without indicating how it is connected to the case at hand is not sufficient to withstand a motion to strike").

On their face, Defendant's sixth, seventh, eighth and ninth affirmative defenses are invalid as a matter of law and the Court should not allow them to stand.

## V. CONCLUSION

Based on the foregoing, the Court should enter an order dismissing Defendant's Counterclaim with prejudice and striking portions of his Answer & Affirmative Defenses.

## LOCAL RULE 3.01(g) CERTIFICATION

Pursuant to Local Rule 3.01(g), on May 29, 2015, among other dates, Counsel for Ms. Kinsman and Counsel for Defendant conferred in good faith regarding Ms. Kinsman's request that the Court strike portions of Defendant's Answer & Affirmative Defenses, but the parties were unable to reach agreement. Defendant opposes Ms. Kinsman's request to strike.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that, on June 1, 2015, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

Respectfully submitted,

/s/ David B. King
David B. King
Florida Bar No.: 0093426
Thomas A. Zehnder
Florida Bar No.: 0063274
Taylor F. Ford
Florida Bar No.: 0041008
KING, BLACKWELL, ZEHNDER & WERMUTH, P.A.
P.O. Box 1631
Orlando, FL 32802-1631
Telephone: (407) 422-2472
Facsimile: (407) 648-0161
Email: dking@kbzwlaw.com
Email: tzehnder@kbzwlaw.com
Email: tford@kbzwlaw.com

Baine Kerr (Colorado Bar No.: 9797)
John Clune (Colorado Bar No.: 27684)
Lauren E. Groth (Colorado Bar No.: 47413)
HUTCHINSON BLACK AND COOK, LLC
921 Walnut Street, Suite 200
Boulder, CO 80302

Telephone:  (303) 442-6514
Facsimile:  (303) 442-6593
Email: kerr@hbcboulder.com
Email: clune@hbcboulder.com
Email: groth@hbcboulder.com

*Counsel for Plaintiff Erica Kinsman*