UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**ERICA KINSMAN,**

        **Plaintiff,**

**v.**                                              **Case No:   6:15-cv-696-Orl-22GJK**

**JAMEIS WINSTON,**

        **Defendant.**

**ORDER**

This cause comes before the Court on Defendant Jameis Winston's ("Winston") Motion to Transfer this case to the Tallahassee Division of the Northern District of Florida, (Doc. No. 8). Plaintiff Erica Kinsman ("Kinsman") filed a Response in Opposition, (Doc. No. 23), and Winston filed a Reply, (Doc. No. 30). The Court held a hearing on the Motion and a related jurisdictional concern on July 8, 2015. Because Winston failed to meet his burden of demonstrating that the balance of convenience is strongly in favor of transferring this case, the Motion will be denied.

**I. BACKGROUND**

Kinsman originally filed this action in Florida state court, pleading claims for sexual battery, assault, false imprisonment, and intentional infliction of emotional distress arising out of a forcible rape that allegedly occurred on December 7, 2012. Winston removed the case on May 1, 2015, claiming that this Court has diversity jurisdiction under 28 U.S.C. § 1332(a). Shortly after removal, Winston filed the instant Motion to Transfer.

**II. SUBJECT-MATTER JURISDICTION**

**A. Legal Standard**

It is axiomatic that "[f]ederal courts are courts of limited jurisdiction," *Federated Mut. Ins.*

*Co. v. McKinnon Motors, LLC*, 329 F.3d 805, 807 (11th Cir. 2003) (quoting *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994)), and where, as here, a party seeks to invoke the Court's diversity jurisdiction, the parties must be from different states and the amount in controversy must exceed $75,000, 28 U.S.C. § 1332(a).[1] Challenges to federal subject-matter jurisdiction can "be raised at any time prior to final judgment," including "shortly after filing, after the trial, or even for the first time on appeal." *Grupo Dataflux v. Atlas Global Grp., L.P.*, 541 U.S. 567, 571, 124 S. Ct. 1920, 1924 (2004) (dismissing suit after six-and-a-half years of litigation for lack of complete diversity of parties at time of filing). Thus, the Court has an independent obligation to ensure that this case was properly subject to its diversity jurisdiction at the time of removal. *Behlen v. Merrill Lynch*, 311 F.3d 1087, 1095 (11th Cir. 2002). The removing party "bears the burden of establishing the citizenship of the parties." *Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C.*, 374 F.3d 1020, 1022 (11th Cir. 2004) (per curiam). "Citizenship is equivalent to domicile," which is "the place of [a person's] true, fixed, and permanent home and principal establishment, and to which he has the intention of returning whenever he is absent therefrom." *McCormick v. Aderholt*, 293 F.3d 1254, 1257-58 (11th Cir. 2002) (per curiam) (internal quotation marks omitted) (affirming district court's finding regarding party's citizenship based on his employment, property ownership, driver's license, voter registration, and tax return).

**B. Analysis**

Winston did not affirmatively represent that he was a citizen of Alabama in the Notice of Removal; instead, he merely stated, "Plaintiff alleges in the Complaint that Plaintiff resides in Florida and that Mr. Winston resides in Alabama." (Doc. No. 1 ¶ 9.) This, combined with facts

---

[1] Neither party suggests that the amount-in-controversy requirement has not been met, and the Court has no reason to believe otherwise.

raised by Kinsman's Response and subject to judicial knowledge pertaining to Winston's recent employment with the Tampa Bay Buccaneers, caused the Court to question its subject-matter jurisdiction. To allay these concerns, the Court directed Winston to answer certain questions about his domicile for diversity-jurisdiction purposes. (*See* Doc. No. 31.) In response, Winston submitted a sworn declaration, (Doc. No. 35), in which he stated that at the time of removal, he possessed a valid Alabama driver's license,[2] was not registered to vote, was not employed, and resided at his parents' house in Hueytown, Alabama.[3] He did not file an income tax return for 2014. Based on this sworn testimony, and Kinsman's counsel's representation at the hearing that he did not contest Winston's domicile, the Court finds as a matter of fact that Winston was a citizen of Alabama at the time of removal and diverse from Kinsman for purposes of subject-matter jurisdiction.

### III. MOTION TO TRANSFER

**A. Legal Standard**

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). The Eleventh Circuit has identified nine factors relevant to the court's decision to transfer a case:

(1) the convenience of the witnesses; (2) the location of relevant documents and the

---

[2] Winston attached a partially redacted photograph of his Alabama license to the Declaration. (*See* Doc. No. 35-1.)

[3] Mere hours after this case was removed, Winston signed a contract with the Tampa Bay Buccaneers and leased an apartment in Florida. This is irrelevant, though, because subject-matter jurisdiction is determined by the facts as they exist at the time of removal. *Behlen v. Merrill Lynch*, 311 F.3d 1087, 1095 (11th Cir. 2002) ("[I]f a district court has subject matter jurisdiction over a diversity action at the time of removal, subsequent acts do not divest the court of its jurisdiction over the action." (citing *Poore v. American-Amicable Life Ins. Co. of Tex.*, 218 F.3d 1287, 1290-91 (11th Cir. 2000), *abrogated in part on other grounds by Powerex Corp. v. Reliant Energy Servs. Inc.*, 551 U.S. 224, 127 S. Ct. 2411 (2007))).

> relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005). The movant bears the burden of establishing that the suggested alternate forum is more convenient. *In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989) (per curiam). No one factor is dispositive, *Manuel*, 430 F.3d at 1137-38, and the Court retains considerable discretion in conducting "an individualized, case-by-case consideration of convenience and fairness," *Suomen Colorize Oy v. DISH Network L.L.C.*, 801 F. Supp. 2d 1334, 1337 (M.D. Fla. 2011) (citation omitted). Ultimately, the movant must "show the balance of convenience is strongly in favor of the transfer" in order to "overcome the presumption in favor of Plaintiff's choice of forum." *Sterling v. Provident Life & Accident Ins. Co.*, 519 F. Supp. 2d 1195, 1204 (M.D. Fla. 2007) (internal quotation marks omitted).

**B. Analysis**

    1. <u>This Case Could Have Been Brought in either Orlando or Tallahassee</u>

"An action 'might have been brought' in a proposed transferee court if: (1) the court had jurisdiction over the subject matter of the action; (2) venue is proper there; and (3) the defendant is amenable to process issuing out of the transferee court." *Windmere Corp. v. Remington Prods., Inc.*, 617 F. Supp. 8, 10 (S.D. Fla. 1985) (citation omitted). As Winston was a citizen of Alabama at the time of removal, the Northern District would have subject-matter jurisdiction to the same extent as this Court. Venue is proper in Tallahassee[4] because "a substantial part of the events . . .

---

[4] Venue is proper in this Court, too, because Winston removed this case from a state court in Orlando, and the federal removal statute, 28 U.S.C. § 1441(a), "establishes federal venue in the district where the state action was pending," even if "venue was improper under state law when

giving rise to the claim occurred" there, 28 U.S.C. § 1391(b)(2), and Winston is amenable to process issuing out of any federal court in Florida because he is accused of committing multiple torts in this state, Fla. Stat. § 48.193(2).

   2. Convenience Factors

   a. *Weight Accorded to Plaintiff's Choice of Forum*

As a general principle in the Eleventh Circuit, "[t]he plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations." *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996) (citation omitted). The Court need not explicitly credit Kinsman's assertions of community bias or even threats against her in Tallahassee in order to respect her choice of forum, especially where she has chosen to litigate in the District where both she and Winston now reside. Nevertheless, Kinsman's statement that she feels unsafe in Tallahassee, (Doc. No. 24-1 ¶ 6), coupled with the evidence of vitriolic online comments regarding Kinsman and her family, (Doc. No. 24-4), suggest that she chose to file here for reasons besides the unadulterated forum shopping of which Winston accuses her. Respecting Kinsman's choice of forum strongly weighs against transfer.

   b. *Witnesses and Parties*

When the court weighs the convenience to witnesses, it "does not merely tally the number of witnesses who reside in the current forum in comparison to the number located in the proposed transferee forum. Instead, the court must qualitatively evaluate the materiality of the testimony that the witnesses may provide." *Gonzalez v. Pirelli Tire, LLC*, No. 07-80453-CIV, 2008 WL 516847, at *2 (S.D. Fla. Feb. 22, 2008) (internal citations and quotation marks omitted). Winston

---

the action was originally filed." *Hollis v. Fla. State Univ.*, 259 F.3d 1295, 1300 (11th Cir. 2001).

submitted a list of 38 potential witnesses or groups of witnesses. (Doc. No. 8-8.) Though many of them reside in Tallahassee, some of the most important ones—Kinsman, Winston, and Ronald Darby, one of two other men present at Winston's apartment during the alleged rape—do not. Kinsman and Winston both live in this District, and Darby lives in Buffalo, NY.[5] Many of the other prospective witnesses on Winston's list, including various FSU administrators, investigators, and athletic department personnel, are unlikely to offer relevant testimony in this case. Winston claims that their testimony could impeach Kinsman by highlighting her inconsistent statements during the investigation and other proceedings following the alleged rape, but transcripts of any such inconsistent statements would accomplish that objective just as well. Even though Tallahassee could be more convenient for a number of witnesses, it would be less convenient for most of the key witnesses and equally inconvenient for another (e.g. Darby). The Court finds that this factor does not strongly support transfer.

In contrast, transfer to Tallahassee would greatly inconvenience the parties. Kinsman lives in Pasco County, which is located in the Middle District and approximately 75 miles from the Orlando courthouse. (Doc. No. 24-1 ¶ 3.) Winston recently signed a contract with the Tampa Bay Buccaneers and leased an apartment to live in during the NFL season, presumably in Tampa, which is also in this District and some 90 miles from the Orlando courthouse. (Doc. No. 35 ¶¶ 6-7.) Both parties presently live at least 250 miles from the Tallahassee courthouse. Winston urges the Court to assess this factor as if he still lived in Alabama, as he did when this case was initially filed and

---

[5] Brendan Sonnone, "*Buffalo Bills Draft CB Ronald Darby, Continue Pipeline to FSU*", ORLANDO SENTINEL, May 1, 2015, http://www.orlandosentinel.com/sports/florida-state-seminoles/chopping-block/os-buffalo-bills-draft-ronald-darby-pipeline-to-fsu-20150501-post.html.

removed. Consistent with its preference for adjudicating based on the facts as they are, the Court declines to do so. This factor weighs against transfer.

### c. *Other Factors*

Some of the remaining factors weigh in favor of transfer, but they are not significant enough to change the overall balance of convenience such that the Court will override Plaintiff's choice of forum. The ultimate question "is not *whether* these factors weigh in [the movant's] favor, but rather, *how much weight* the Court should afford them." *Trafalgar Capital Specialized Inv. Fund v. Hartman*, 878 F. Supp. 2d 1274, 1287 (S.D. Fla. 2012). Winston has not shown that any other factors are important enough to outweigh the convenience to Kinsman and himself of trying the case in Orlando, let alone the presumption in favor of keeping the case in the plaintiff's chosen forum.

Some evidence may be located in Tallahassee, but documents can easily be transported electronically to Orlando and the inconvenience of bringing whatever physical evidence exists in Tallahassee to Orlando is not sufficiently great to alter the balance of factors. The availability of process over a slightly greater number of potentially relevant witnesses may favor Tallahassee, but Winston has failed to meet his burden of showing that any witnesses would be unwilling to testify without compulsion and that their testimony is actually important to the case. *Mason v. Smithkline Beecham Clinical Labs.*, 146 F. Supp. 2d 1355, 1361-62 (S.D. Fla. 2001). Additionally, Winston has not shown that he could not effectively present the testimony of a witness who is unwilling to attend the trial by way of deposition. *See Trafalgar*, 878 F. Supp. 2d at 1287-88. The locus of facts is indisputably Tallahassee, but Winston does not show how that affects the balance of convenience between the two venues. Neither the relative means of the parties nor the courts' familiarity with the governing law supports transfer, either.

Finally, trial efficiency and the interests of justice are effectively non-factors. Winston claims that trial efficiency would be maximized by uniting this case with Kinsman's lawsuit against FSU's Board of Trustees that is already pending in the Northern District, but that point is dulled by the fact that the FSU litigation presents very different legal and factual issues and is already somewhat further along than this case.[6] Judicial economy would not be served by transfer, either: both Districts are very busy, as the parties' dueling statistics from the Administrative Office of the U.S. Courts reveal, and guessing which District would reach a resolution of this case more quickly would require speculative powers beyond the capabilities of the undersigned.

### IV. CONCLUSION

Based on the foregoing, it is ordered as follows:

1. Defendant Jameis Winston's Motion to Transfer this case to the Tallahassee Division of the Northern District of Florida, (Doc. No. 8), filed May 8, 2015, is **DENIED**.

**DONE** and **ORDERED** in Chambers, in Orlando, Florida on July 9, 2015.

ANNE C. CONWAY
United States District Judge

---

[6] The legal standard under which Kinsman's lawsuit against FSU was transferred is also completely different and inapplicable here. Judge Presnell was obligated to transfer the FSU case under 28 U.S.C. § 1406 because Kinsman could not meet her burden of demonstrating that "a substantial part of the events . . . giving rise to the claim occurred" in Orlando, 28 U.S.C. § 1391(b)(2), which was the only potentially applicable basis for venue at that time. *See Kinsman v. The Fla. State Univ. Bd. of Trs.*, 6:15-cv-16-Orl-31KRS (Doc. No. 50) (Apr. 27, 2015). Under the legal standard applicable in this case, the Court has greater discretion to decide whether Winston has met his considerable burden of showing that the Orlando forum is so inconvenient and not in the interests of justice as to warrant transfer.


- 9 -

Copies furnished to:

Counsel of Record
Unrepresented Parties